May it please the court, my name is Tom Jones, I represent the appellant William Stephens. I'm here today to discuss the case of William Stephens, Norris's conviction and sentence became final in October 1995, at that time reasonable jurists would have determined contrary to this district court's opinion, decision that Norris's jurors could give mitigating effect to his evidence of emotional distress or a hot temper and good behavior and good character. I'm here today to discuss the case of William Stephens, Norris's conviction and sentence became final in October 1995, at that time reasonable jurists would have determined contrary to this district court's opinion, decision that Norris's jurors could give mitigating effect to his evidence of emotional distress or a hot temper and good character. I'm here today to discuss the case of William Stephens, Norris's conviction and sentence became final in October 1995, at that time reasonable jurists would have determined contrary to this district court's opinion, decision that Norris's jurors could give mitigating effect to his evidence of emotional distress or a hot temper and good character and good character. I'm here today to discuss the case of William Stephens, Norris's conviction and sentence became final in October 1995, at that time reasonable jurists would have determined contrary to this district court's opinion, decision that Norris's jurors could give mitigating effect to his evidence of emotional distress or a hot temper and good character and good character. Newton, which is 371, F3, 250, 2004. Beasley, 242, F3, 248, 2001. Boyd, 167, F3, 907, 1999. Nichols, 69, F3, 1255, 1995. James, 987, F2, 1116, 1993. And Chenette, 482, F3, 815, 2007. That's an alternative holding. So these are all cases that you say preceded Pierce? That's correct. And keep Pierce from doing what it did? And we don't have any of these because . . . I didn't include them in the brief. That's correct. I've done additional research. Why didn't you . . . it seems like we would have them as a 28J then. It's not 28J material. It's not newly arising material. It's a new development because you discovered it late. In that case, it would be a new development. Anyway, what's the big proposition? The big proposition is that the jurors with the two special issues, deliberateness and future danger, can give mitigating effect to evidence of good behavior and good conduct. But even subsequent to Pierce . . . That preceded . . . I'm sorry. No, subsequent to Pierce, a case like McGowan, which is looking at a conviction that became final in 92-93, Judge Owen's decision. I don't recall that McGowan said that good conduct, good behavior evidence, was not cognizable within the two special issues. I could be wrong on that. I don't recall that McGowan said that. I've got it right here. Troubled background and good character. Troubled background, I'll give you good character. What's the date on McGowan? Well, McGowan, the convictions were final in 92-93, the date of the decision on our court's 2012. It's an extended discussion and application of Pierce. Well, again, I would say that where it conflicts the earlier cases . . . Oh, it too would be . . . It too would be. If it follows Pierce, Pierce is the outlier under the rule of orderliness. Have you provided these citations to opposing counsel? I have not. I will. I can . . . I thought that there might be post-hearing briefing. Well, we'll certainly allow opposing counsel to give us a letter of whatever length they think is appropriate to address all these, because it comes as a surprise. I'm not even suggesting that you as the appellant, that you might get credit for making this argument, since it wasn't made in your brief. We'll have to look at that. I would suggest that an argument made for the first time, an oral argument . . . Is what? Would be . . . have effect. I would also say . . . Usually, we say that the arguments have to be made in the blue brief, not even in the reply brief. That's correct. And I think you'll find some cases that say that arguments made for the first time at oral argument aren't accepted. But we will look at that to determine whether it's the kind of thing that you would be precluded from raising. But in any event, opposing counsel can give us whatever they wish, limited to these cases. Right. And I would . . . In this case, if during voir dire or in closing, the prosecutor ever said, you've got to only consider mitigation as it relates to those two special issues, that would be a problem. That would be a problem that did not happen here, and they don't complain about that here. Well, when I was reading the voir dire, it does come up. For example, I'm sure you know the record well. Prospective juror Kemp. Do you remember her? I . . . She complained, saying, what about mitigation that doesn't fit? And she was specifically told, no, those special issues corralled. That was the word used, corralled. Well, I would say that under Penry, if the mitigation evidence could not be given effect by the special issues, that would be correct. However, in this case, because the evidence was cognizable within the special issues . . . But what about . . . I mean, my Penry concerns in this case are compounded by what I think I'm right in saying, was the government very interested in closing argument strategy at guilt and punishment phase, where they waive initial government closing, which means the defense has got to go first. The government only gives a closing in rebuttal. Do you remember this? That is, I would say, almost routine in Harris County. Okay, but what that means in the Penry world is exactly what happened at Sidebar after the government's closing at the punishment phase, where the defense attorney said, please, can I talk about my daughter, my client's daughter? And that is mitigation. I need to be able to respond to the prosecutor's argument that he's got a lifestyle of being a child killer. There was nothing that prevented the jurors from . . . But if the defense didn't have the opportunity to even urge the mitigation . . . I don't think they specifically objected to the lack of ability to respond to a . . . No, they did. They said that, in fact, it was making them ineffective, constitutionally ineffective, that they couldn't give rebuttal. And then they proffered the rebuttal. Were the . . . within the briefs that had been submitted . . . Well, it's not in the brief argument, but it's the record that . . . I would say it's not in the briefs argument, so I didn't address that. But, okay. Okay. Those cases that you just cited to us, I'm sorry I didn't get all the numbers down. Sure. Are these post-Franklin cases? Yes. They're all post-Franklin. That's correct. But before Pierce. That's correct. Okay. Okay. Well, you need to provide the courtroom deputy with all those full citations, as well as opposing counsel. Sure. No problem. Unfortunately, there's more to come. I just want you to know that. This case is controlled by Penry, Graham, and Teague. The Texas statute at the time asked the sentencing jurors whether Norris acted deliberately and whether or not he posed a future danger. The Texas special issue system had been approved by the Supreme Court in Jurek in 1976, in Franklin in 1988, and was in line with Lockett in 1978, Eddings 1982, and Skipper in 1986. Then, in 1988, Penry arose. The Supreme Court found a problem with the Texas system. It said the jurors at Penry offered evidence of mental retardation, now called intellectual disability, and childhood abuse. The Supreme Court said the jurors could not give mitigating effect to the evidence. O'Connor, writing in Penry, borrowed from her concurrence in Brown, the California versus Brown, and said such evidence was mitigating because of society's long-held belief that defendants who commit criminal acts attributable to a disadvantaged background or to emotional or mental problems may be less culpable than defendants who have no such excuse. The court also found that the Penry rule was not barred by Teague, the rules against retroactivity. They said it was merely an extension of the prior rules set out in Jurek, Lockett, Eddings, Skipper, and Franklin. Roughly speaking, the rule was this. When you offer Penry-style evidence, you get a Penry-style general mitigation instruction. This rule is not barred by Teague. About three years later, Graham came along. Graham offered evidence of youth, positive traits. He was churchgoing. He was respectful. He was peaceable. He loved the Lord. There was positive family background. He asked for a general mitigation instruction in line with Penry. The Supreme Court determined that because Graham did not offer Penry-style evidence, his request for a Penry-style general mitigation instruction was a request for a new rule and barred by Teague. The Graham rule roughly is this. When you do not have Penry-style evidence but seek a Penry-style general mitigation instruction, you seek a new rule, a new rule barred by Teague. Under Teague, a new rule is a rule that is not dictated by precedent existing at the time the defendant's conviction became final. It validates a state court's interpretation of existing precedent if the interpretations are reasonable and in good faith. And the principle applies even if the good faith interpretation runs afoul of later decisions. Thus, unless reasonable jurist hearing the petitioner's claim at the time his conviction became final would have felt compelled, not allowed, but compelled by existing precedent to rule in the defendant's favor, the reviewing federal court may not do so later. Do you lose if we follow Pierce? Probably. Okay, so probably. Do you have some argument that even if Pierce is binding, because this is your only shot on that, otherwise you lose. I mean, I'm just. One of my Pierce arguments. Why did you lose if we follow Pierce? I have other arguments. I got a pocket full of arguments. One is that in Pierce, the Teague issue was not raised and was not addressed. Here, the state specifically raises the Teague issue. Well, the court discusses at some length how Graham is limited in the Teague rule and then how the two subsequent cases say that people should be able to give effect to other mitigation. The court does discuss Graham and the Teague rule, so it's not true. In Pierce? Yes. I'll take your word for it. I don't recall it being actually raised in Pierce. I could be wrong on that. I'm holding Pierce. Well, if you're holding it, then I'm simply misremembering. Graham's actual holding was that it was a new rule in violation of Teague. However, the Abdul Kabir case took pains to distinguish this requirement, and it goes on at length to talk about how Teague was in Graham but not in these other cases. Yes, it certainly does address that. I will say that in Pierce, the state did not raise the Teague issue, so it did not say that new rules under Teague would be barred by application. In this case, the state specifically raises the Teague issue. Although the court did address the Teague issue, I don't think the state specifically argued that Teague blocked the application of a new rule. I'm going by memory. I could be wrong on that. I'm talking about Pierce now. Okay, two, or this would be number three. If this court, in application of the rule of orderliness, rejects the good conduct, good character evidence in Pierce, the result doesn't change. The Pierce result does not change. The Pierce court determined that the defendant offered evidence of childhood difficulty, not childhood abuse, childhood difficulty. He had spent some time in juvenile lockup, and he had been raised in a low-income part of town. So under the Penry rule, this is a type of Penry-style evidence, he would have been entitled to a Penry-style instruction, even without good conduct, good character language. I won't go so far as to say the language is dicta, but it's not necessary to the judgment, to the ultimate decision. The errors that the court made below. The courts determined that the jurors using the deliberateness and future danger questions could not give mitigating effect to Norris' evidence of emotional disturbance, hot temper. Again, this flies in the face of circuit precedent. Again, new cases, not cited in my brief. Jurors with the deliberateness and future dangerousness questions can give mitigating effect to evidence of hot temper, jealousy, and the defendant's having blown up. That is West, 92, F3, 1385, 1996. Marquez, 11, F3, 1241, 1994. Blackman, 22, F3, 560, 1994. The court also suggested that hot temper, emotional distress, is dual-edged evidence. Logically, that doesn't follow. Here's why. With dual-edged evidence, there's a positive correlation between the aggravating aspects of the evidence and the mitigating aspects of the evidence. For example, in Penry, intellectual disability. The greater the disability, the greater the likelihood he's a future danger, but the greater mitigation. Child abuse. The greater the abuse, the greater likelihood he's going to be a future danger, but the greater the mitigation, the greater the likelihood that he's less culpable. With hot temper, it doesn't work that way. Hot temper is mitigating because of its transitory nature. Because under Graham, it's an aberration not likely to be followed. As Graham court said, the future danger question in connection with intellectual disability and child abuse dictates a positive answer, an affirmative answer. That's not the case with hot temper. Hot temper could very well dictate a negative answer to the future danger and to the deliberateness question. The jurors may take a look at it and say, because it's an aberration, he did not act deliberately, and he will not pose a future danger. I'm not saying they would have decided that, but I'm saying it was logically within their grasp. Good conduct, good character evidence. The court said church involvement, long-term gainful employment, close family relationships were not relevant to the issue of future dangerousness and deliberateness. I've cited the cases orally. They're on the record, and I'll give them to the appellee, suggesting that, stating that, such evidence is cognizable within the deliberateness and the future danger questions. And these predate Teague, I mean, excuse me, predate Pierce, and under the rule of orderliness, would be controlling. And these cases, for the most part, I think were not addressed by Pierce. I would also, in terms of good behavior, I would also note the Franklin decision. In Franklin, Supreme Court plurality determined that good behavior in prison could be cognized, was an indication of future peaceableness. Now, that was a plurality, a four-person plurality. However, if we look at O'Connor's concurrence, she agrees with that. She disagrees with some other aspects, so that's a majority suggesting that good behavior in prison is cognizable within the future dangerousness question. Well, I would say with greater logical force, if good behavior in the restrictive environment of prison is indication of future peaceableness, then good behavior in the less restrictive free world is even greater evidence of future peaceableness. And in conclusion, I would say that in October of 1995, the date that relevant for Teague purposes, reasonable jurists would not have felt required to grant Norris, who did not offer Penry-style evidence, a Penry-style general mitigation issue. I'm here to answer any questions that you may have about it. All right, so here's what you need to do. You need to give the courtroom deputy a list of those citations without any embellishment or explanation of the cases, just the citations. You can give a pen cite for the page numbers, but that's it. We don't want any more gloss from you about what those cases say. Appellees, on the other hand, are allowed however many pages they wish to make any kind of response regarding those cases. Separately from that, you will give us a letter personally signed by Attorney General Ken Paxton explaining what the position of the Attorney General of Texas is regarding the failure of the state to cite these cases in the blue brief or to give opposing counsel more of a notice as to why were those cases not noticed, why were they discovered so late. So that's to come directly from the Attorney General. I will pass that on. You've indicated now you're open for any questions from the panel. Well, I apologize. And you've saved time for rebuttal, Mr. Jones. Mr. McCann. May it please the Court. My name is Patrick McCann, and I'm here today to represent Michael Norris, who is the appellee in this matter. Mr. Norris has also brought a request for a certificate of appealability, raising several issues, including the prosecutorial misconduct that we believe did affect the outcome in this that Judge Higginson mentioned. We're here today . . . Yes, sir. . . . and let me just explain on behalf of the Court that we know that you're at a serious disadvantage having had all this sprung on you today. We want to give you every opportunity to respond, and we certainly don't expect you, except to the extent you may be knowledgeable about these cases, to give us a response. We're going to look very seriously at the way the State has handled this, and we'll do everything possible to see to it that you're treated fairly as an advocate in this case. I'm grateful to the Court. If I may, on behalf of my colleague, I sympathize with the position that he's in because the State of Texas, through him, is asking this Court to ignore the factual findings of a fairly tough-minded district court in Houston, to go against this circuit's own prior panel decision, and to ignore basically three decades of Supreme Court guidance that say one can limit the type and number of offenders who are eligible for the death penalty, but one cannot limit the mitigation that a jury may consider in these matters. And that is the holding of Penry. And if we go, if I may dispose of my colleague's retroactivity and other arguments relating to the time of this, according to Penry itself, Penry did not state a new rule. It simply applied what should have been the rule since 1978 under Lockett v. Ohio, and since the early 80s, I believe 84, under Eddings v. Oklahoma, to the Texas special issues. And it was this circuit's own opinion in the first time in Penry cited in the Supreme Court's decision where the justice said that they found no way for a reasonable juror to apply Penry's mitigating evidence under those two special issues. It is a Sisyphean challenge to attempt to squeeze the type of evidence that Mr. Norris had and that the district court found into a question on deliberateness, and on the other hand, a question on future danger. Good character does not apply to deliberateness, and although conceivably one could find certain aspects of good character to be relevant to a future danger argument, the problem is that good character was not the only thing that was offered here by Mr. Norris. His emotional disturbance, which the district court acknowledged, also in the record, if the court would cast its eye there, it would find that the arresting officer acknowledged that Mr. Norris expressed remorse, and remorse is mentioned specifically in Pierce as the type of evidence that did not fit the Texas special issues. In Jurek v. Texas, the state, much like a drowning man clinging to a life raft, has been saying that Jurek was facially constitutional for decades. The problem is that Jurek itself said, we uphold the facial challenge on the condition that Texas courts interpret mitigating information broadly enough so that all that type of information under Lockett and under Eddings can come in. That has not been the case. It was not the case when the Supreme Court in Penry 2 said that the Texas courts, when they judicially crafted a nullification instruction, that they thought that solved the problem. It did not. It was that way in Smith v. Texas when they attempted to limit, again, the type of mitigating evidence that comes in, and again, my colleague attempts to bring down and limit and funnel the type of evidence that comes in under a Penry analysis, and that has consistently been struck down by the Supreme Court. I also would point out on the timeline that in 1995, Lockett was 17 years old, Penry itself was 6 years old, and the Texas legislature had already crafted a remedy for the Penry issue and come up with the now familiar mitigation instruction in Texas and had jettisoned the deliberateness. Now, I'm not going to go through this question completely. By the time that on direct appeal that this was decided, Penry had been the law for some time. If one looks at when the state habeas decisions came down, we are now actually on one of the post-Pierce, I believe, and in those cases, all of the cases that I have mentioned and all the cases cited in Pierce, Abdul Kabir, for instance, all of those were the law when the state habeas decisions came down. I sympathize with this court if it attempts to unravel the court of criminal appeals habeas decisions in this matter, but as the district court said, we don't have to get there. This is straightforward. There is significant evidence that needed to be considered by a jury that might have mitigated against the death penalty for Mr. Norris. At the time of his trial, there was no way for them to get there, and at the time of his trial, Penry was the law of the land. This is a simple case, perhaps more simple than the state would like it to be, because the government of Texas has never liked the result of Penry. They have not wanted this to be the law for some time, and they continue to try and lead this court away from its own precedent, its own recognition of the issues in Penry. The district courts who have been applying this for relief for some time, and if I may, the court of criminal appeals in numerous cases, including Bunchen v. State and Wefall v. State, have simply sent these back for lack of a Penry question. They have granted Penry relief on cases that are after Mr. Norris'. So this court and its sister court and the Supreme Court are actually on the same page, and it is not the page of the government of Texas. I'm sorry, it's simply not. I appreciate the courts stepping up and intervening on the input of new matters, and I would happily respond to those. But I urge this court to sit there and make it clear in its decision, regardless of the briefing that may come down on this, that Penry is the law. There must be a vehicle for a jury to express its reasonable response to a reason for mercy, and those reasons are as vast as any human can possibly imagine. And if we don't do that, then we actually do fly in the face of clearly established Supreme Court law, the deference entitled to fact findings by the district courts, and to this court and its circuits' own precedence. That is what the state wants you to throw away. I don't know a way for this court to fulfill its duty and do what the state asks it to do. Other than some seminal opinion about Penry that you might seek, what would be the most straightforward way for the court to address this case? I believe, honestly, that the standard of review giving and looking at both Penry I and Penry II to see where an attempt needed to be made to fix the question was given, and then a recording under Penry II of how those attempts went and what was not proper. I think if one looks at those things and then looks at Abdul Kabir and Pierce in tandem, I think that the path is fairly clear. The path has been that we needed, we in Texas, needed a question that gave the jurors a chance to express their moral reason. We didn't quite get it until the legislature came up with something. That was fine afterwards. It has been upheld, and generally speaking, anything that comes up for mitigation most times is not going to fit within the narrow aspects of the juric questions. And juric was conditioned upon a Penry-type reading of mitigating information. If you look at those as a holistic whole and a fabric, I think the reasoning becomes clear. This court itself helped spur the review in Penry by its own opinion, and it was cited in Penry. From then, it has always been you cannot limit the jury's consideration of reasons not to impose death. You can limit the state's ability to seek it against certain characters and against certain people and against certain classes of offenders or types of offense. Those two streams have been very clear, and nothing the state has offered in the case is not, I'm familiar with Beasley only because the issues in that happened to come up in another brief, but that doesn't change the Penry stream of reasoning. And the problem is, on a practical level, that the state is asking for a remedy that is already here. If, as this court may take judicial notice, if Mr. Norris is sent back for retrial in Harris County, where I practice, as a matter of public record, the DA has made it very clear that she will retry these cases, and in the retrials, they get the mitigation question. So, essentially, we are here- That's not in the record. We really can't consider it. It's not in the record, Your Honor, but it is certainly in the law now that, under a retrial, that the person being retried for punishment gets the Penry instruction. And that's a matter of public law that is accessible to this court. And that remedy is available now, if this court simply affirms the findings of the district court below, which it should give deference to in any case. And the last part I would say, and pending, of course, any of your questions, when a state court gets Supreme Court law wrong, it is unreasonable. It is an unreasonable application of Supreme Court law. When they simply don't try and follow, to the best of their ability, what's clearly written down by the Supreme Court- That is a fair statement of the law, although we all know that the Supreme Court has given the state courts a good bit of latitude in terms of what is a reasonable application of Supreme Court law. And I think that's fair, Your Honor, and in this case, all that we're asking is for Mr. Norris to get the Penry instruction to which he should be entitled, and which now is Texas law, and which he would get on retrial. And that's all the district court was saying. And frankly, that's all that Pierce says. It says if we're going to impose this sanction, this penalty, then there has to be an opportunity for a jury to consider reasons for mercy. And that's what a mitigation question is under law. And that's what he would get if this court affirms the low court's ruling, which we ask it to do. I have some time pending. Does the court have any questions on the certificate of appealability? I was going to ask, you're familiar with McGowan. Am I right that good character evidence was at issue in McGowan as well as troubled childhood? I believe good character was exactly at issue. Troubled childhood, to be fair to my colleague, was. But the problem with trying to limit Penry-type evidence to troubled childhood is just like the nexus requirement that used to try to be imposed. And that's been clearly not the law for some time, and it was clearly not the law when Mr. Norris actually had his final habeas decision. And the prominent good character evidence in this case was churchgoer, decent towards his daughter. And his mother. And the remorse. And the remorse, yes, sir. The daughter did testify. The daughter testified not to the degree that I believe the defense counsel wanted to go into because of the issue that you had raised earlier. I think he was limited in his questioning. But the daughter did testify. The remorse did come out in front of the jury, but again, no way to express their reasoned response under those questions. Was there voir dire? When the jurors were being voir dire, were they told you have to corral it into these special issues? Do you have a memory of that? I believe the prosecutor's comments would be read that way. Obviously, defense did not want to do that. And the judge's voir dire didn't really address those questions, but the prosecutor certainly attempted to limit those in that way. If the court has no further questions, I would ask it to affirm the grant of relief by the Southern District. And I look forward to answering the citations brought forth by my colleague. And I, on behalf of my colleague, I would ask this court to exercise leniency in the fact that if he did prepare, perhaps poorly, that it consider a lesser sanction than it might normally do. This is clearly a duty imposed upon him rather than his own. All right, thank you, Mr. McCann. Let's see, so do you think you'd be able to submit your material within 30 days, which would be May 6th? Of course, Your Honor. All right. I will do so. Thank you, Your Honor. Okay, Mr. Jones, you've saved time for rebuttal. Well, rather than rebuttal, I'll just want to apologize. I meant no disrespect to this court. If there is a messed up on my part, it is simply that I did not view this as 28J material. I didn't view this as something. Well, that's fair because we do have almost every day we get a 28J letter in some case in which an attorney isn't submitting new material, but is submitting something that he or she overlooked or just now discovered. So in fairness to you, it's good that you have read the rule and applied it properly, and that part, it seems, speaking for myself, shouldn't be held against you. On the other hand, you as the appellant do have the obligation to present a thorough argument in order for us to consider it. And coming in for the first time in oral argument and bringing a bunch of new cases and bringing for the first time a contention that an important case like Pierce is not proper binding precedent, that's a different matter from the 28J. But you're right. Under the wording of that rule, you should not have submitted the old cases. I would also say that if this court wishes to ignore completely my oral argument and rely on my written brief, I'm comfortable with that. I think that the rule of orderliness, the court is aware of the rule. The court is presumed to know the law. I rely on the court. I would also say that I fully expected there to be some sort of post-hearing briefing. That is, I would turn over the cases. This has happened in the past with me where courts have asked for additional briefing after oral argument. I certainly didn't wish to lie behind the log in connection with Appley's attorney. This was simply I didn't know the way to do it other than to simply bring it up orally and then ask the court for permission for some post-hearing briefing, and I apologize. There's kind of a fine line, and it should be a fine line. Sometimes it's a fuzzy line on the obligation we impose on appellants. That is, we have a lot of cases that say we don't consider arguments that aren't raised in the initial brief. On the other hand, if the argument is made but not all the cases are cited, then that is sometimes a different question. How that's going to play out with you, I don't know. It may be that we will determine that it hasn't been adequately briefed, and we simply won't consider your argument about the rule of orderliness, or it may be that we deem the issue that you've raised, the Penry issue, appealing from the district court judgment sufficiently that we'll rule on it. But that's just something we'll have to look at carefully, and it can get somewhat complicated. I will say that when the court issued its hearing order, it specified expressly the issues it wanted to address. At that point, I realized in terms of Pierce that I was in deep water, and I just did more research. My error is in not letting the court know ahead of time. And so I apologize. If there are any questions, I'll be glad to answer them. As best as I can remember, I will pass on the information to my supervisor in connection with Attorney General Paxton. All right, and we'll expect General Paxton's letter by next Monday, which is the 11th, I believe. Can I get something in writing as to what it should address? No, you can just listen to the recording of what the court has said. But, I mean, generally it needs to address how he explains, if he does try to explain it, how it is that the arguments about the rule of orderliness and about whether Pierce is binding precedent weren't sprung on the court until oral argument. Well, he would have no knowledge of that. That's me entirely. Well, that's up to you to fill him in as your ultimate supervisor and to him to explain it to us on behalf of the state. All right, the case is under submission. The court is in recess.